Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| BRUCE WINCHESTER CAMACHO<br><br>Parte Recurrida<br><br>V.<br><br>PEP BOYS MANNY, MOE AND JACK OF PR INC.<br><br>Parte Peticionaria | KLCE202400609 | *Certiorari* Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Civil Núm.: BY2022CV0525<br><br>Sobre: DESPIDO INJUTIFICADO, REPRESALIA, RECLAMACIÓN DE SALARIOS DEL PROCEDIMIENTO SUMARIO |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

**Rivera Pérez, Jueza ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece Pep Boys Manny, Moe and Jack of Puerto Rico, Inc. (en adelante, Pep Boys o parte peticionaria), mediante un recurso de *Certiorari* y nos solicita que revisemos la *Resolución y Orden* emitida el 17 de mayo de 2024 y notificada el 20 de mayo de 2024 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI). Mediante este dictamen, el TPI declaró "No Ha Lugar" la *Moción de Sentencia Sumaria* presentada el 19 de mayo de 2023 por la parte peticionaria y ordenó la continuación de los procedimientos del caso.

Por los fundamentos que expondremos, se expide el presente recurso de *Certiorari* y se confirma la resolución recurrida.

Número Identificador

SEN2024_____

**-I-**

El 9 de febrero de 2022, la parte recurrida Sr. Bruce Winchester Camacho (en adelante, Sr. Winchester Camacho) presentó una *Querella* sobre despido injustificado, represalia en el empleo y reclamación de salarios en contra de su patrono Pep Boys al amparo de la Ley Núm. 379 de 15 de mayo de 1948, *infra*, la Ley Núm. 80 de 30 de mayo de 1976, *infra*, y la Ley Núm. 115-1991, *infra*.[1] En la querella, el Sr. Winchester Camacho alegó que fue despedido injustificadamente de su empleo y en represalia por haber denunciado ante la gerencia de la compañía irregularidades relacionadas al pago del Seguro Choferil, Seguro por Incapacidad No Ocupacional Temporal, y Bono de Navidad. Específicamente, alegó lo siguiente:

> "10. Durante los meses de junio a agosto de 2019, el querellante denunció ante la gerencia de la querellada ciertas irregularidades y omisiones relacionadas al pago del Seguro Choferil y el Seguro por Incapacidad No Ocupacional (SINOT), y sobre el pago del bono de navidad a los empleados.
>
> 11. Desde ese momento, la gerencia de la querellada comenzó a presionar y a menospreciar el trabajo del querellante, estableciendo un patrón de acoso ininterrumpido en contra [de] su persona.
>
> 12. Al final de enero de 2020, la parte querellada contrató a la Sra. Jennifer Vega a través de una agencia de empleo.
>
> 13. Al reclutar a la señora Vega, la querellada unilateralmente asignó al querellante a otro puesto de otra clasificación ocupacional de menor rango, sin embargo, el querellante continuó realizando las tareas que realizaba.
>
> 14. El cambio de clasificación ocupacional del puesto que el querellante ocupaba al momento de ser reclutada la señora Vega tenía el propósito de sentar las bases para eventualmente fundamentar el despido en la eliminación del nuevo puesto que le fue asignado.
>
> 15. El puesto del cual el querellante fue despedido era único en su clasificación ocupacional.

[1] Apéndice del *certiorari*, a las págs. 1-11. La reclamación se presentó bajo el procedimiento establecido en la Ley Núm. 2 de 17 de octubre de 1961, según emendada, conocida como *"Ley de Procedimiento Sumario de Reclamaciones Laborales"*, 32 LPRA sec. 3118 *et seq.*

16. Al contratar a la señora Vega, el querellante fue relevado únicamente de las tareas que realizaba en el área de "retail", siendo estas asignadas a la señora Vega.

17. La señora Vega fue contratada con un salario menor que el del querellante.

18. Al momento de ser contratada, la señora Vega era menor de 40 años y menor que el querellante.

19. Al momento de ser despedido el querellante tenía 55 años.

20. El 19 de junio de 2020[,] al querellante le fue informado que se tomó la decisión de eliminar el puesto que ocupaba.

21. Según fue informado al querellante por la Sra. Tara Givens, Asistente de Vicepresidente de Recursos Humanos, su despido fue motivado por la alegada necesidad de reducir personal a causa de una alegada reducción de los ingresos de la querellada.

22. Sin embargo, las tareas que el querellante realizaba al momento de ser despedido fueron asignadas a la señora Vega u otro personal que fue retenido o reclutado.

23. La contratación de la señora Vega y el cambio de puesto del que fue sujeto el querellante se hicieron con el propósito deliberado de despedirlo con la excusa de la necesidad de hacer una reducción de personal cuando en realidad lo que se hizo fue despedirlo como represalia por haber denunciado las irregularidades mencionadas anteriormente.

24. En la alternativa, la contratación de la señora Vega y el cambio de puesto del que fue sujeto el querellante se hicieron con el propósito deliberado de asignarlo a un puesto único en la clasificación ocupacional para despedirlo con la excusa de la necesidad de hacer una reducción de personal cuando en realidad las tareas fueron reasignadas a la señora Vega y de esta manera la querellante eliminar de su nómina al querellante quien, por razón de su antigüedad en la empresa tenía un salario mucho mayor."[2]

Además, el Sr. Winchester Camacho alegó violación al Artículo 3 de la Núm. 80 de 30 de mayo de 1976, *infra*, al no haber sido retenido en el empleo con preferencia a los empleados de menos antigüedad. Finalmente, solicitó los remedios que las referidas leyes laborales les proveen a los empleados.

---

[2] Apéndice del *certiorari*, a las págs. 4-5.

El 2 de marzo de 2022, Pep Boys presentó *Contestación a Querella*,[3] en la que negó las alegaciones de despedido injustificado, represalias y reclamación de salarios hechas en su contra en la querella y levantó varias defensas afirmativas. Al respecto, explicó lo siguiente:

"[…]

D. [...] [E]l despido respondió a una reorganización, mediante la cual la posición del Querellante fue eliminada. Más aún, el querellante fue asignado a la posición que ocupaba al momento del despido a raíz de una degradación en puesto como parte de una medida disciplinaria. El Querellante era la única persona ocupando la referida posición, por lo cual no cabe hablar aquí de comparaciones en términos de antigüedad entre el Querellante y ningún otro empleado o empleada. En la alternativa, de entenderse que el Querellante debió haber sido comparado con otras personas al tomar la decisión de despido, lo cual se niega, el historial del querellante demuestra una diferencia razonablemente clara o evidente a favor de la capacidad, productividad, desempeño, competencia, eficiencia o historial de conducta entre el Querellante y la empleada con la cual se compararía, por lo cual su despido no fue arbitrario ni caprichoso.

[…]

F. El Querellante no tiene una causa de acción al amparo de las leyes que protegen contra represalias ya que ninguno de los actos de la Compañía respondió a represalias. El Querellante no participó en una actividad protegida. En la alternativa, en la eventualidad de que se entienda que el Querellante participó en una actividad protegida, lo cual se niega, Pep Boys no tomó represalias por el Querellante por razón alguna. No existe nexo causal entre cualquier participación del Querellante en una actividad protegida y decisión alguna relacionada al empleo del Querellante. Ninguna actividad protegida fue un factor en el despido del querellante.

G. La Compañía no adeuda suma alguna a la Querellante por los conceptos reclamados ni por ningún otro, toda vez que la parte querellada le satisfizo toda suma que por ley y/o políticas de la empresa viniera obligada a pagar."[4]

Luego de varios incidentes procesales, el 19 de mayo de 2023, Pep Boys presentó la *Moción de Sentencia Sumaria* que nos ocupa

---

[3] Apéndice del *certiorari*, a las págs. 14-20.
[4] Apéndice del *certiorari*, a las págs. 18-19.

solicitando la desestimación de la querella presentada en su contra por esta alegadamente no exponer una reclamación que justificara la concesión de un remedio.[5] En síntesis, alegó que no procedía en derecho la causa de acción por violación a la Ley Núm. 80 de 30 de mayo de 1976, *infra*, debido a que el Sr. Winchester Camacho fue despedido de su empleo por justa causa "a raíz de una reorganización empresarial *bona fide* que se llevó a cabo a nivel nacional [...] que resultó en la eliminación de su posición y la de otro empleado".[6] Además, alegó que el Sr. Winchester Camacho no participó en una actividad protegida por la Ley Núm. 115-1991, *infra*, y que este "meramente canalizó a sus supervisores las quejas presentadas por otros empleados de la Compañía con el fin de manejar las mismas", por lo que tampoco procedía una causa de acción al amparo de las disposiciones de esta ley.[7] En la alternativa, alegó que no existía un nexo causal entre la alegada actividad protegida y el despido. Finalmente, Pep Boys alegó que el Sr. Winchester Camacho era un empleado exento de las disposiciones de la Ley Núm. 379 de 15 de mayo de 1948, *infra*, por lo estaba impedido de solicitar remedios bajo la misma.

El 30 de junio de 2023, el Sr. Winchester Camacho presentó su *Oposición a Moción de Sentencia Sumaria*.[8] En síntesis, se opuso a la desestimación de la demanda alegando que existían controversias de hechos materiales que impedían la resolución sumaria del caso. Alegó que Pep Boys no logró demostrar que se realizó una organización *bona fide* de la compañía que justificara su despido. Sostuvo que existía controversia sobre la validez del despido y sí las acciones del patrono fueron en represalia por haber

---

[5] Apéndice del *certiorari*, a las págs. 21-366.
[6] Apéndice del *certiorari*, a las pág. 22.
[7] *Íd.*
[8] Apéndice del *certiorari*, a las págs. 367-401.

participado en una actividad protegida por la Ley Núm. 115-1991, *infra.*

El 18 de julio de 2023, Pep Boys presentó una *Moción para que se Tenga por No Opuesta la Moción de Sentencia Sumaria Presentada por Pep Boys*.[9] En esta, alegó que la moción en oposición a la solicitud de sentencia sumaria presentada por el Sr. Winchester Camacho no cumplía con las disposiciones de la Regla 36 de Procedimiento Civil, *infra,* por lo que solicitó que no fuera tomada en consideración.

Finalmente, el 17 de mayo de 2024, notificada el 20 de mayo de 2024, el TPI emitió la *Resolución y Orden* recurrida, mediante la cual declaró No Ha Lugar la *Moción de Sentencia Sumaria* presentada por Pep Boys y ordenó la continuación de los procedimientos del caso.[10] En el dictamen, el TPI formuló cincuenta (50) determinaciones de hechos incontrovertidos. Además, determinó que estaban en controversia los hechos siguientes:

### "HECHOS EN CONTROVERSIA

1. Determinar si el querellante se vio imposibilitado de presentar su reclamo de represalia conforme dispone el Manual del Empleado. En relación a ello:

a. Determinar si es cierto que las señoras Tara Givens y Pat Agnello son las personas que estaban llevando a cabo actuaciones en represalia contra del señor Bruce Winchester. De contestar en la afirmativa, ¿en qué consistieron dichas conductas?

b. Determinar si es cierto que las señoras Tara Givens y Pat Agnello son las únicas personas a las que el señor Bruce Winchester podía presentar su queja administrativa por discrimen, represalias o cualquier otro asunto. De contestar en la negativa, cuáles eran dichas opciones para presentar sus reclamos y si dicha información surgía del Manual de Empleados, Memo o información del conocimiento del querellante.

2. Determinar cuál era el proceso establecido en Pep Boys cuando se recibe una Querella del Departamento

---

[9] Apéndice del *certiorari*, a las págs. 402-407
[10] Apéndice del *certiorari*, a las págs. 410-432.

del Trabajo que tenía que seguir el señor Bruce Winchester desde que comenzó a trabajar para la compañía y si el mismo cambió en el algún momento. De haber cambiado el proceso, en qué fecha, cómo cambió y en qué momento se le notificó al señor Bruce Winchester del cambio.

3. Determinar cuál era el protocolo, norma o procedimiento establecido en Pep Boys sobre las preocupaciones o *concerns* de los empleados, si dicho proceso se cambió en algún momento y se le informó al señor Bruce Winchester. A base de esto, determinar si el *Disciplinary Action* del señor Bruce Winchester del 16 agosto de 2019, era meritorio o no.

4. Determinar quién aprobó el cambio de compensación de la Sra. Milagros Moreno.

5. En el caso del señor Bruce Winchester, ¿cuáles son las *Notice of Performance Counseling*, quejas y medidas disciplinarias que se tomaron en su consideración para su *demotion* y despido?

6. Determinar si existe o no un Plan de Reorganización de Pep Boys USA y PR que motivó el despido del querellante. De resultar en la afirmativa, ¿cuál es la fecha de elaboración e implementación y contenido del Plan de Reorganización?

7. Determinar si antes o en el momento del *demotion* del señor Bruce Winchester los gerenciales de Pep Boys o de Recursos Humanos sabían que el nuevo puesto del querellante sería eliminado como parte de la reorganización.

8. Determinar si el *demotion* del querellante se hizo como parte de un esquema de represalias, a sabiendas de que el puesto al que fue asignado sería eliminado.

9. Determinar si la eliminación del puesto que el querellante ocupaba, se hizo como parte de un esquema de represalias contra el querellante.

10. Si Pep Boys implementó de forma uniforme los criterios de la reorganización, incluyendo el despido del señor Bruce Winchester.

11. ¿Cuáles son todas las labores realizadas por el señor Bruce Winchester, en el puesto de Regional HR Manager, en comparación a su puesto anterior?

12. Determinar si el despido del señor Bruce Winchester fue injustificado.

13. Determinar si el señor Bruce Winchester tiene derecho a la mesada y a cuánto asciende ésta.

14. Determinar si el señor Bruce Winchester fue víctima de represalias y si es acreedor de alguna suma de dinero por dicha razón.

15. Determinar si el señor Bruce Winchester tiene derecho a ser reposicionado en su puesto.

16. Determinar si se le adeuda alguna suma de dinero, según establecido en el Manual de Empleados en el Reglamento de horas libres con goce de sueldo, ya que según informado por Pep Boys el despido del señor Bruce Winchester fue por motivo de una reorganización *bona fide* y si es acreedor de dicha cantidad."

A base de estas determinaciones, el foro recurrido concluyó, en síntesis, lo siguiente:

"[R]esulta evidente al examinar las mociones sometidas y los documentos acompañados con éstas, que todavía persisten controversias de hechos que en estos momentos impiden que se resuelva cualquiera de las causas de acción presentadas en la Querella. Igualmente, resulta evidente que existen también elementos subjetivos de intención y credibilidad, referente a las alegaciones de las partes en cuanto a las controversias ya mencionadas, que impiden que se resuelva la Querella mediante el mecanismo de sentencia sumaria, a tenor con la normativa aplicable a dicho mecanismo procesal discutido previamente."[11]

En desacuerdo con la determinación el TPI, Pep Boys acudió ante nos el 30 de mayo de 2024 mediante el presente recurso de *Certiorari.* En este, señala la comisión por el TPI de los errores siguientes:

Erró el TPI al considerar la *Oposición Enmendada* a la [*Moción de Sentencia Sumaria*] a pesar de que no cumplió con los requisitos de la Regla 36.3(b) de Procedimiento Civil, y reiterados en Zapata Berríos, Meléndez González y Lugo Montalvo, para oposiciones a [*Moción de Sentencia Sumaria*].

Erró el TPI al declarar No Ha Lugar la [*Moción de Sentencia Sumaria*] a pesar de que no existen controversias genuinas de hechos materiales.

El 25 de junio de 2024, el Sr. Winchester Camacho presentó *Oposición a Petición de Certiorari.* Además, presentó una *Solicitud de Desestimación por Falta de Jurisdicción,* solicitando la desestimación del recurso de *certiorari* por entender que este foro no tiene jurisdicción para revisar una resolución interlocutoria en un procedimiento sumario laboral.

---

[11] Apéndice del *certiorari,* a la pág. 431.

Así, contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

-II-

A.

El recurso de *certiorari* es "un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Véase, además, *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). En el ámbito judicial, el concepto discreción "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho." *IG Builders et al. v. BBVAPR*, supra, pág. 338. La discreción, "es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46, 211 DPR ___ (2023); *800 Ponce de León v. AIG*, supra, pág. 174.

En el caso particular del Tribunal de Apelaciones, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita los asuntos interlocutorios que podemos revisar mediante un recurso de *certiorari*, bajo el entendimiento de que estos pueden esperar hasta la conclusión del caso para ser revisados en apelación. *IG Builders et al. v. BBVAPR*, supra, pág. 337. Al respecto, la Regla 52.1 de Procedimiento Civil, *supra*, dispone específicamente que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 56 y 57, o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá

revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.* Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

A su vez, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que el Tribunal de Apelaciones deberá tomar en consideración al determinar si procede la expedición de un recurso de *certiorari* o de una orden de mostrar causa. Estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia". Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

La precitada regla mandata que, como foro apelativo, evaluemos si alguna de las instancias enumeradas anteriormente se aplica a la petición de *certiorari.* De alguna estar presente, podemos ejercer nuestra discreción e intervenir con el dictamen recurrido. Por

el contrario, estaremos impedidos de expedir el auto, y por lo tanto deberá prevalecer la determinación del foro recurrido. Los criterios antes transcritos sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008).

De ordinario, los tribunales apelativos no debemos intervenir con las decisiones discrecionales de un Tribunal de Primera Instancia a menos que se demuestre que dicho foro incurrió en un abuso de discreción, y que nuestra intervención evitaría un perjuicio sustancial. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013). En todo caso, el criterio rector al momento de evaluar si un tribunal ha abusado de su discreción es la razonabilidad de la determinación impugnada, y su fundamento en un sentido llano de justicia. *Íd.,* págs. 434-435.

**B.**

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V., R. 36, regula todo lo relacionado a la moción de sentencia sumaria. Dicho mecanismo procesal es utilizado en aquellos litigios que no presentan controversias genuinas de hechos materiales y que, por consiguiente, la celebración de un juicio en su fondo no es necesaria en la medida que solo resta por dirimir determinadas controversias de derecho. *Acevedo y otros v. Depto. Hacienda y otros*, 2023 TSPR 80, 212 DPR ___ (2023); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018). Se considera un hecho material aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Bobé et al. V. UBS Financial Services*, 198 DPR 6, 20 (2017). Asimismo, "resulta esencial que de la prueba que acompaña la solicitud de sentencia sumaria surja de manera preponderante que no existe

controversia sobre los hechos medulares del caso." *Cruz Cruz v. Bella Group*, 2024 TSPR 47; 213 DPR __ (2024).

El propósito que se persigue con el mecanismo de la sentencia sumaria es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 335; *León Torres v. Rivera Lebrón*, supra, pág. 43. Para ello, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, establece cual será el contenido y los requisitos de forma que deberán observarse tanto en la solicitud de sentencia sumaria que inste la parte promovente, como en la oposición que pueda presentar la parte promovida. Véase, también, *León Torres v. Rivera Lebrón*, supra, pág. 43.

La Regla 36.3 (e) de Procedimiento Civil, *supra*, dispone que la sentencia sumaria solicitada será dictada inmediatamente:

> "si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente." Véase, además, *Rodríguez García v. UCA*, supra; *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664 (2018).

Como regla general, una moción de sentencia sumaria no procederá cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. *Fernández-Bernal v. RAD-MAN et al.*, supra, págs. 335-336; *S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 167 (2011). De igual forma, es también norma reiterada que el mecanismo de sentencia sumaria no es el adecuado cuando existen controversias

de hechos materiales sobre elementos subjetivos de intención, propósitos mentales o negligencia. *Velázquez Ortiz v. Mun. De Humacao*, 197 DPR 656 (2017); *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 129 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 219 (2010).

La Regla 36.4 de Procedimiento Civil, *supra*, regula que ocurre cuando no se dicta una sentencia sumaria en su totalidad, sobre la misma expone:

> "Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad.
>
> A base de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno."

Es importante puntualizar que, al momento de atender una solicitud de revisión de sentencia sumaria, los foros apelativos estamos llamados a "examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias" pautadas en las Reglas de Procedimiento Civil. *Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 338 que cita a *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020). En ese proceder, y de encontrar que los hechos materiales realmente están incontrovertidos, nos corresponde entonces revisar si el foro primario aplicó correctamente el Derecho. *Fernández-Bernal v. RAD-MAN et al.*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

**c.**

La Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como la *"Ley sobre Despidos Injustificados"*, 29 LPRA sec. 185 *et seq.*, ofrece una protección a aquellos empleados remunerados, contratados por tiempo indeterminado y despedidos injustificadamente de su trabajo. *León Torres v. Rivera Lebrón*, supra. En estos casos, el patrono tendrá que pagarle al empleado cesanteado una indemnización comúnmente denominada como "mesada", además del sueldo devengado hasta el despido. *Íd.*; *González Méndez v. Acción Social et al.*, 196 DPR 213 (2016); *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209 (2015); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920 (2015).

El pago de la mesada sirve un doble propósito. Primeramente, desalienta la práctica de despedir personal sin que exista causa justificada para ello, a la vez que le proporciona una ayuda económica al empleado quien ya no cuenta con los ingresos de su antiguo puesto. *González Méndez v. Acción Social et al.*, supra; *SLG Torres-Matundan v. Centro Patología*, supra; *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586 (2013).

De otra parte, según provisto en la Ley Núm. 80 de 30 de mayo de 1976, *supra*, la mesada representa el remedio exclusivo disponible a un empleado cesanteado injustificadamente frente a su ex patrono. Esto es así a no ser que existan otras causas de acción independientes al despido. *González Méndez v. Acción Social et al.*, supra; *Lugo Montalvo v. Sol Meliá Vacation*, supra; *SLG Torres-Matundan v. Centro Patología*, supra.

A pesar de que la Ley Núm. 80 de 30 de mayo de 1976, *supra,* no dispone expresamente qué constituye un despido injustificado, en su Artículo 2, menciona varios escenarios que liberan al patrono de responsabilidad. Algunos de estos supuestos están basados en conducta atribuible al empleado mientras que otros responden al cierre, reorganización o reducción de la empresa. 29 LPRA sec. 185b;

*Roldán Flores v. M. Cuebas et al.*, 199 DPR 664 (2018). En lo concerniente al comportamiento del empleado, el esquema normativo dispone que se reputará justa causa para el despido si este: (1) ha exhibido un patrón de conducta impropia o desordenada; (2) no ha cumplido con sus labores de manera eficiente, ha realizado su trabajo tarde o negligentemente o en violación a las normas aplicables; o (3) ha violado reiteradamente aquellas reglas y reglamentos razonablemente establecidos para la operación del establecimiento y los cuales le han sido suministrados oportunamente. 29 LPRA sec. 185b (a) (b) (c). Véase, además, *González Méndez v. Acción Social et al.*, supra.

En torno al último inciso, se conoce que los patronos están facultados para promulgar reglamentos internos y fijar las normas de conducta a seguirse en el lugar de trabajo y a las cuales todos los empleados estarán sujetos, siempre y cuando estas sean razonables. *Jusino et als. v. Walgreens*, 155 DPR 560 (2001). En consecuencia, "las violaciones de las normas del empleo constituirán 'justa causa' para el despido cuando el patrono logre demostrar: (1) que las reglas establecidas para el funcionamiento del establecimiento son razonables; (2) que le suministró una copia escrita de dichas normas al empleado y, (3) que el empleado las violó en reiteradas ocasiones". *Íd.*, pág. 573.

Por otro lado, en cuanto a las causales de despido dirigidas a las operaciones de la empresa y su buen funcionamiento, el Artículo 2 de la Ley Núm. 80 de 30 de mayo de 1976, *supra*, dispone que será justificado el despido por:

> "(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento."

En cuanto a la causal del despido por reorganización en la empresa, nuestro más alto foro ha expresado lo siguiente:

"Específicamente, aclaramos que tal *reorganización debe ser "bona fide"*, es decir, *no puede ser producto del mero capricho del patrono* sino producto de consideraciones relacionadas **al manejo de la empresa**. Concluimos que, siempre y cuando responda a una reestructuración *bona fide*, el patrono puede "modificar su forma de hacer negocios a través de algún tipo de cambio dirigido a optimizar sus recursos y aumentar las ganancias, ya sea eliminando plazas, creando otras nuevas o fusionando algunas ya existentes como vehículo para enfrentar problemas financieros o de competitividad". Así, sostuvimos que los cambios en la empresa pueden acarrear el despido y el reclutamiento simultáneo de personal debido a que "las reformas en ocasiones **exigen prescindir de labores hasta entonces útiles para el funcionamiento del negocio y la incorporación de posiciones nuevas con destrezas diferentes necesarias para lograr unas metas empresariales actualizadas**". No obstante, indicamos que **para que el patrono pueda justificar el despido al amparo del inciso (e) —por reorganización—debe "presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad"**.

[…]

[…] si la razón esbozada alude al inciso (e), es decir, **bajo la teoría de reorganización empresarial**, la empresa no necesariamente tiene que alegar y probar que tuvo problemas económicos, sino que el patrono **tiene que probar que, en efecto, se realizó una reorganización de buena fe y que, como parte de ese plan, el empleado fue despedido.** Es decir, al argumentar como "justa causa" una reestructuración, lo que el patrono debe demostrar es que la acción de modificar su manera de hacer negocios se hizo en consideración al buen y normal funcionamiento del establecimiento. Pues, el concepto justa causa está arraigado a consideraciones que atañen al manejo de la empresa. En ese sentido, como correctamente establecimos en *SLG Zapata-Rivera v. J.F. Montalvo*, supra, **no es función de los tribunales administrar los negocios ni aconsejar a los directores de estos sobre cómo manejar los asuntos de su empresa, siempre y cuando estas decisiones no estén motivadas por**

**razones discriminatorias ni que mucho menos sean producto del mero capricho del patrono**.

Por consiguiente, según establecimos en *SLG Zapata-Rivera v. J.F. Montalvo*, supra, para poder justificar el despido al amparo del Art. 2(e) —por reorganización—, **el patrono debe presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad.** Ahora bien, hoy aclaramos, y pautamos, que para demostrar justa causa **basta con articular y presentar prueba sobre una razón válida para el despido,** como por ejemplo sería la **reorganización empresarial** de los servicios rendidos al público. En ese sentido, **la obligación que impone la Ley Núm. 80,** *supra,* **de probar efectivamente el proceso de reestructuración, no está sujeta a que se acredite la existencia de un proceso o un plan de reestructuración de una** *forma particular* **o** *específica*. O sea, basta con que el patrono demuestre que la acción **respondió a una decisión gerencial válida** a la luz de las circunstancias y que no obedeció a un mero capricho o arbitrariedad, y así *tendrá que acreditarlo.* Ello, pues el patrono tiene el derecho a hacer los arreglos o cambios que estime necesarios y convenientes para optimizar sus recursos y aumentar las ganancias de la empresa. Por cuanto, el juzgador de los hechos puede otorgarle valor probatorio a las declaraciones juradas presentadas, como a los testimonios vertidos mediante deposiciones y la prueba documental que las partes acompañan al someter una moción de sentencia sumaria si estos cumplen con los requisitos establecidos en la Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V. Ello, pues este tipo de evidencia puede contener hechos que podrían ser admisibles como prueba, si se basan en conocimiento personal de los declarantes en cuanto a su contenido en relación con la reorganización empresa. (Énfasis en el original) (Citas omitidas) *Segarra Rivera v. Int'l Shipping et al.,* 208 DPR 964, 985-1003 (2022).

Por último, la única limitación que impone la ley en este tipo de casos es "retener con preferencia en el empleo al empleado con más antigüedad siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos". Artículo 3 de la Ley Núm. 80 de 30 de mayo de 1976, *supra.* No obstante, "la retención por antigüedad tiene que ser en la misma clasificación ocupacional y no entre clasificaciones ocupacionales distintas". *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 984-985. Además, la Ley Núm. 80 de 30 de mayo de 1976, *supra,* dispone que "[n]o se considerará despido por justa causa aquel que se hace

por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento". *Feliciano Martes v. Sheraton*, 182 DPR 368, 381 (2011); 29 LPRA sec. 185b.

**D.**

La Ley Núm. 115-1991, según enmendada, conocida como *"Ley de Represalias"*, 29 LPRA sec. 146 *et seq.*, se aprobó con el propósito de proteger a los trabajadores contra posibles represalias por parte de los patronos, motivadas por el ofrecimiento de testimonio o información ante ciertos foros. *Cordero Jiménez v. UPR*, 188 DPR 129 (2013). En específico, el Artículo 2 (a) establece lo siguiente:

> "Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley." 29 LPRA sec. 194b.

Para compeler a su cumplimiento, la Ley Núm. 115-1991, *supra*, creó una causa de acción a favor de los empleados. Al respecto, el Artículo 2 (b) dispone como sigue:

> "Cualquier persona que alegue una violación a esta ley podrá instar una acción civil en contra del patrono dentro de tres (3) años de la fecha en que ocurrió dicha violación y solicitar se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado. La responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar, será el doble de la cuantía que se determine causó la violación a las disposiciones de esta ley."

El Artículo 2 (c) de la Ley Núm. 115-1991, *supra*, dispone las dos vías que tienen los legitimados para establecer una causa de acción por represalias. En la primera, el empleado debe valerse de evidencia directa o circunstancial para probar una violación del

estatuto. En la segunda, el empleado puede establecer un caso *prima facie* de represalias, al demostrar que participó en una actividad protegida y que fue subsiguientemente despedido, amenazado o discriminado. *Rivera Menéndez v. Action Service*, 185 DPR 431 (2012); *Feliciano Martes v. Sheraton*, supra. Una vez el empleado prueba su caso *prima facie*, el patrono debe rebatir la presunción establecida si alega y fundamenta una razón legítima y no discriminatoria para la acción adversa. Si el patrono cumple con este segundo paso, el empleado debe demostrar que la razón alegada por el patrono no excusa la acción adversa. *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345 (2009).

Con relación al periodo transcurrido entre la actividad protegida y el acto de represalia, se ha reconocido que no siempre se configura dentro de un espacio temporal breve ni inmediato. Ante este escenario, la proximidad temporal no será suficiente para inferir la causalidad, por lo que el perjudicado deberá constatar con otros elementos que comprueben la existencia de un nexo causal entre la actividad protegida y la acción disciplinaria adversa. "Así, el trabajador deberá presentar evidencia que establezca: (1) que fue tratado de forma distinta a otros empleados; (2) que existió un patrón de conducta antagónica en su contra; (3) que las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de incongruencias; o (4) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal. Lo anterior implica, necesariamente, un acercamiento caso a caso". *Feliciano Martes v. Sheraton*, supra, pág. 400.

Al adoptar esta postura, nuestro Máxima Curia postuló:

También es principio de hermenéutica que las leyes laborales deben ser interpretadas liberalmente para conceder al trabajador la mayor protección de los derechos que el legislador estatuyó. Por eso, toda duda legítima sobre el alcance de la protección estatutaria debe ser resuelta a favor del obrero. Esta protección se

debe a que los estatutos laborales tienen un fin reparador y social. *Íd.*, pág. 363. (Citas omitidas).

Como se sabe, una interpretación liberal en las reclamaciones laborales, por sí sola, no puede hacer abstracción de la letra de la ley, según promulgada por la Asamblea Legislativa. Sin embargo, no impide que se ausculte la intención legislativa cuando esto sea necesario. Si luego de analizar el estatuto y su intención persiste la duda en cuanto a su alcance, entonces, la interpretación debe favorecer al trabajador.

Por virtud de la Ley Núm. 169-2014, el legislador amplió la protección contra represalias, especialmente, en su aplicación a las empresas privadas. Concretamente, reconoció que una queja verbal informal a un superior o el utilizar los procedimientos internos de la empresa constituyen actividades protegidas. *Exposición de Motivos*, Ley Núm. 169-2014, *supra*.

> "Esta Asamblea Legislativa reafirma la política pública de alta estima a la protección de los derechos de los trabajadores por lo cual, considera que se adelantan los objetivos que originaron la *Ley de Represalias contra el Empleado por Ofrecer Testimonio* extendiendo su protección a los testimonios, expresiones o información que brinde un empleado durante los procesos internos de la empresa para la cual trabaja. A su vez, se equipara la legislación estatal a la legislación federal contenida en el Título VII de la Carta de Derechos Civiles de 1964, según enmendada." *Íd.*

Claro está, el solo hecho de solicitar una reunión para discutir algún asunto relacionado con los términos y condiciones de su empleo es insuficiente para determinar que participó de una actividad protegida bajo el estatuto reparador. Tampoco se protege al empleado contra acciones disciplinarias en su contra. *Guías para la Interpretación de la Legislación Laboral*, Departamento del Trabajo y Recursos Humanos del Gobierno de Puerto Rico, 1ra. ed., 8 de mayo de 2019, pág. 179.

Ahora, la protección cubre el acto de intentar ofrecer o brindar cualquier información o expresión en los procedimientos internos de la empresa o ante cualquier persona en una posición de autoridad. A modo de ejemplo, aun antes de la enmienda de la Ley Núm. 169-2014, *supra,* el Tribunal Supremo consideró una actividad protegida el acudir a la Corporación del Fondo del Seguro del Estado, aunque no se tratara de un testimonio en el curso de una investigación administrativa; o al departamento de recursos humanos del patrono para querellarse de discrimen por razón de sexo; o al patrono para solicitar que cumplimente los documentos necesarios para poder presentar una solicitud de beneficios al amparo de la Ley de Beneficios por Incapacidad Temporal. Véase, *Irizarry v. J & J Cons. Prods. Co., Inc.*, 150 DPR 155 (2000); *Cintrón v. Ritz Carlton*, 162 DPR 32 (2004); *Feliciano Martes v. Sheraton*, supra.

**-III-**

En su recurso de *Certiorari*, Pep Boys señala que erró el TPI "al considerar la *Oposición Enmendada a la* [*Moción de Sentencia Sumaria*] a pesar de que no cumplió con los requisitos de la Regla 36.3(b) de Procedimiento Civil, y reiterados en Zapata Berríos, Meléndez González y Lugo Montalvo, para oposiciones" y "al declarar No Ha Lugar la [*Moción de Sentencia Sumaria*] a pesar de que no existen controversias genuinas de hechos materiales."

Evaluada la resolución de recurrida y los planteamientos de error señalados por la parte peticionaria en su recurso, determinamos que no existe ningún impedimento procesal que nos impida atender los méritos de este recurso. Tratándose de la denegatoria de una moción de carácter dispositivo, estamos facultados, conforme a lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra,* para revisar esta determinación mediante un recurso de *certiorari*. Además, por tratarse de la revisión de una solicitud para que se dicte sentencia sumaria a favor

del patrono peticionario, lo que dispondría del caso por completo, estamos también facultados, aunque el caso sea tramitado por la vía sumaria para intervenir conforme a lo establecido en *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723 (2016), y *Dávila Rivera v. Antilles Shipping, Inc.*, 147 DPR 482 (1999).

Examinadas *de novo* la moción de sentencia sumaria y su oposición, acogemos las determinaciones de hechos formuladas por el TPI en el dictamen recurrido por entender que están debidamente sustentadas y concluimos que dicho foro actuó correctamente al resolver que en este caso existen hechos materiales en controversia que impiden la resolución sumaria de las causas de acción presentadas en la querella.

A nuestro juicio, la prueba que acompaña las mociones de las partes no es suficiente para que un tribunal pueda reunir ante sí toda la verdad de los hechos. Además, hemos identificado que las controversias que presenta este caso contienen en su mayoría elementos subjetivos, en los que el factor de credibilidad juega un papel esencial o decisivo para llegar a la verdad, y donde se depende en gran parte de lo que extraiga del contrario en el curso del juicio en su fondo. Por lo tanto, entendemos que el mecanismo de sentencia sumaria no resulta apropiado para disponer de estas controversias.

**-IV-**

Por los fundamentos antes expuestos, se expide el recurso de *Certiorari* y se confirma el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones